### IN THE UNITED STATES DISTRICT
### COURT FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| Equal Employment Opportunity Commission<br>    10 S. Howard Street, 3rd Floor<br>    Baltimore, MD 21201 | )<br>)<br>)<br>) | Civil Action No._____ |
| Plaintiff, | )<br>) | **COMPLAINT** |
| v. | )<br>) | |
| FedEx Ground Package System, Inc.<br>    1000 FedEx Drive<br>    Coraopolis, PA 15108 | )<br>)<br>) | JURY TRIAL DEMAND |
| Defendant. | )<br>)<br>) | |

### I. NATURE OF THE ACTION

This is an action brought under Title I of the Americans with Disabilities Act of 1990, as amended ("ADA"), and Title I of the Civil Rights Act of 1991, to correct unlawful discrimination on the basis of disability and to provide appropriate relief to Charging Parties Courtney Dawson, Lourdes Deeb, Victor Franco, Joseph McGinnis, Elena Misenas, Torrion Norton, Terri Morhoff, Anthony Pratt, Fernando Ramirez-Savon, Diana Sanchez, Christina Schaeffer, Brad Schumann, Charvis Thomas, Gregory Thomas, Mark Valimont, Fred Weiss, and Tina Whitehurst, and to similarly aggrieved individuals, all of whom are deaf or hard-of-hearing current or former Package Handlers or deaf or hard-of-hearing applicants to the Package Handler position.[1]

Defendant, FedEx Ground Package System, Inc. ("FedEx"), receives applications from, and employs, a significant number of, deaf and hard-of-hearing individuals in its Package Handler position at its distribution facilities nationwide. Numerous facilities have employed

---

[1] The Charging Parties and similarly aggrieved individuals are collectively referred to as "aggrieved individuals."

and/or continue to employ multiple deaf and hard-of-hearing individuals.  Despite knowingly receiving applications from and employing significant numbers of deaf and hard-of-hearing individuals as Package Handlers, FedEx, on a recurring and continuing basis throughout the company, has failed to provide effective reasonable accommodations to deaf and hard-of-hearing individuals with regards to job application procedures, and to deaf and hard-of-hearing Package Handlers to enable them to perform essential job functions and to enjoy equal benefits and privileges of employment, including those related to receiving employer information, participating in meetings, and communicating with management.

The widespread abdication of FedEx's duty to accommodate flows, in part, from FedEx's failure to engage deaf and hard-of-hearing Package Handlers and applicants to the Package Hander position in an interactive process to determine necessary and effective reasonable accommodations, despite being aware of their disabilities and the need for and availability of reasonable accommodations.  The abdication of the duty to accommodate occurs at all points in the employment life cycle of a Package Handler, starting with the facility tour that is a mandatory part of the hiring process, continuing with new employee orientation and training, and then with regards to the many employer-mandated meetings that Package Handlers are required to attend. FedEx has denied many requests for effective communications based accommodations from deaf and hard-of-hearing Package Handlers, including repeated requests from the same individual. It has also simply ignored many other requests, and, with regards to deaf and hard-of-hearing Package Handlers generally, has failed to initiate an interactive process regarding the obvious need for communications-based accommodations.

In addition to failing to provide communications-based accommodations, FedEx has also failed to provide modified equipment, such as vibrating scanners, to enable deaf and hard-of-

hearing Package Handlers to meet production quotas with the same level of effort as their hearing co-workers. It has also failed to provide reasonable accommodations to ensure the safety of deaf and hard-of-hearing Package Handlers, such as by adding flashing lights to tuggers (or motorized moving equipment), and implementing emergency notification systems and training on such protocols.

## II. JURISDICTION AND VENUE

1.      Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343, and 1345.  This action is authorized and instituted pursuant to Section 107(a) of the ADA, 42 U.S.C. § 12117(a), which incorporates by reference Section 706 of the Civil Rights Act of 1964, as amended ("Title VII"), 42 U.S.C. § 2000e-5, and pursuant to Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2.      Venue is proper in the United States District Court for the District of Maryland as the employment practices alleged to be unlawful were committed throughout the United States, including within the jurisdiction of this Court.  *See* 42 U.S.C. § 12117(a), incorporating 42 U.S.C. § 2000e-5(f)(3).

## III. PARTIES

3.      Plaintiff U.S. Equal Employment Opportunity Commission ("EEOC") is the agency of the United States of America charged with the administration, interpretation and enforcement of the ADA and is expressly authorized to bring this action by Section 107(a) of the ADA, 42 U.S.C. § 12117(a), which incorporates by reference Section 706 of Title VII, 42 U.S.C. § 2000e-5, and Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

4.      FedEx is a Delaware corporation headquartered in Pennsylvania with operations throughout the United States, including in Maryland, which has continuously had at least 15 employees.

5.      At all relevant times, FedEx has continuously been an employer engaged in an industry affecting commerce under Section 101(5) of the ADA, 42 U.S.C. § 12111(5), and Section 101(7) of the ADA, 42 U.S.C. § 12111(7), which incorporates by reference Sections 701 (g) and (h) of Title VII, 42 U.S.C. §§ 2000e(g), (h).

6.      At all relevant times, FedEx has been a "covered entity" under Section 101(2) of the ADA, 42 U.S.C. § 12111(2).

## IV. CONDITIONS PRECEDENT

7.      All conditions precedent to the institution of this lawsuit have been fulfilled

8.      More than thirty days prior to the institution of this lawsuit, seventeen deaf or hard-of-hearing individuals (sixteen current or former Package Handlers and one applicant for the Package Handler Position), filed nineteen Charges of Discrimination with the EEOC alleging violations of the ADA by FedEx.  These charges are as follows:

> Dawson v. FedEx Ground  541-2008-00129
> Deeb v. FedEx Ground  510-2008-01384; 510-2012-01087
> Franco v. FedEx Ground  480-2012-02049
> McGinnis v. FedEx Ground  530-2012-00593
> Misenas v. FedEx Ground  38Q-2008-00208
> Norton v. FedEx Ground  540-2013-01849C
> Morhoff v. FedEx Ground  510-2008-00448; 510-2010-04835
> Pratt v. FedEx Ground  563-2010-01331
> Ramirez-Savon v. FedEx Ground  543-2009-00285
> Sanchez v. FedEx Ground  480-2012-00107
> Schaeffer v. FedEx Ground  846-2009-20923
> Schumann v. FedEx Ground  443-2012-01130
> Thomas, C. v. FedEx Ground  410-2009-05699
> Thomas, G. v. FedEx Ground  846-2011-46443
> Valimont v. FedEx Ground  450-2011-01382
> Weiss v. FedEx Ground  17F-2012-60313

Whitehurst v. FedEx Ground  440-2008-04965

9.      The EEOC consolidated the above charges as part of a nationwide systemic investigation of ADA violations by FedEx against deaf and hard-of-hearing individuals.  After the parties participated in the EEOC's investigative process, the EEOC issued Letters of Determination notifying FedEx that there was reasonable cause to believe that, in relevant part, it had violated the ADA with respect to the Charging Parties and further with respect to similarly aggrieved deaf and/or hard-of-hearing individuals who are current or former Package Handlers or applicants to the Package Handler position.

10.     Following its determination, the EEOC endeavored to eliminate the unlawful employment practices identified in the Letters of Determination through informal methods of conciliation, conference, and persuasion.  After these efforts proved unsuccessful, the EEOC so notified the parties and proceeded with the commencement of this lawsuit.

## V. STATEMENT OF CLAIMS

### The Aggrieved Individuals are Qualified Individuals with Disabilities

11.     Each aggrieved individual is deaf or hard-of-hearing.

12.     Each aggrieved individual is substantially limited in major life activities, including but not limited to hearing, speech, and interpersonal communication.

13.     The aggrieved individuals' physical limitations were and are known to FedEx.

14.     Each aggrieved individual has medical, educational, employment, and/or vocational records of being deaf or hard-of-hearing.

15.     Each aggrieved individual was an applicant for the Package Handler Position or is a current or former Package Handler.

16.     The Package Handler position is an entry-level position at FedEx's distribution facilities nationwide.

17.     The minimum qualifications for the Package Handler position are being eighteen years of age and passing a criminal background check.

18.     Each aggrieved individual satisfies the minimum qualifications for the Package Handler position.

19.     Each aggrieved individual is a qualified individual with a disability who can perform the essential functions of the Package Handler position with or without reasonable accommodations.

### The Package Handler Position – Hiring Process

20.     The application process for the Package Handler position includes a mandatory sort-observation and tour, completion of an online or paper application form, and an interview.

21.     During the mandatory sort-observation and tour, applicants are led on a tour of the facility and view an active "sort", or package handling shift. A manager discusses the nature of the work, job expectations, and working environment.  The manager will also answer questions during the sort-observation and tour.

### The Package Handler Position – Essential Functions and Benefits and Privileges

22.     The functions of the Package Handler position involve the physical loading and unloading of packages from delivery vehicles, the placing and repositioning of packages in FedEx's conveyor systems, and the scanning, sorting and routing of packages.

23.     Package Handlers use a scanner to scan package barcodes for information relevant to the routing process.  The scanners typically utilize an audible beep as part of the user interface.

24.    Package Handlers are subject to productivity standards based on facility type and applicable job function.

25.    After hire, Package Handlers go through several days of orientation and training.

26.    During orientation and training, a manager reviews numerous FedEx employee policies, including but not limited to: scheduling and attendance; discipline; equal employment and anti-discrimination/harassment; reasonable accommodation; security; wages and payroll; workplace safety (including OSHA and DOT required training on issues such as handling of hazardous materials); violence; workplace injury and injury reporting; career opportunities; and FedEx's internal grievance procedure.  Numerous instructional videos are shown to the new hires addressing the above and related topics.

27.    During orientation and training, a manager explains the functions of the Package Handler position, proper methods and techniques for performing the functions, and applicable performance standards.

28.    Following orientation and training, and throughout their employment, Package Handlers are required to attend regularly occurring and/or prescheduled meetings, many involving videos or other audible presentation systems, and communications by and with FedEx concerning job functions and terms, conditions and privileges of employment. These meetings include but are not limited to:

(a)  group pre-sort meetings prior to the start of every shift;

(b)  weekly and/or monthly all-sort meetings;

(c)  safety trainings;

(d)  human resources engagement meetings;

(e)  performance meetings or reviews;

(f)  investigations;

(g)  discipline/termination meetings;

(h)  workplace injury meetings;

(i)  transfer/promotion interviews;

(j)  and other one-on-one meetings with human resources and management.

**FedEx's Failure to Engage Aggrieved Individuals in an Interactive Process and to Provide them with Effective Reasonable Accommodations.**

29.     FedEx has had longstanding knowledge—from prior to 2006 and continuing through the present—that it receives applications from, has employed, and continues to employ, a significant number of deaf and hard-of-hearing individuals in the Package Handler position throughout the country.  This includes, but is not limited to, at its facilities in:

(a)  Medley, Florida

(b)  Ellenwood, Georgia

(c)  Pittsburgh, Pennsylvania

(d)  Exton, Pennsylvania

(e)  Colorado Spring, Colorado

(f)  Lenexa, Kansas

(g)  Carol Stream, Illinois

(h)  Hagerstown, Maryland

(i)  Rialto, California

(j)  San Diego, California

(k)  Willington, Connecticut

(l)  Council Bluffs, Iowa

(m)  Lansing, Michigan

8

(n)  St. Paul, Minnesota

(o)  Austin, Texas

(p)  Wichita Falls, Texas

(q)  Portland, Oregon

(r)  Salt Lake City, Utah

(s)  Scott Depot, West Virginia

30.    Under Section 102 of the ADA, 42 U.S.C. § 12112, FedEx's legal duties to deaf and hard-of-hearing Package Handlers and to deaf and hard-of-hearing individuals who apply for the Package Handler Position include, but are not limited to, the following:

Engaging in good faith in an interactive process to identify effective reasonable accommodations to enable deaf and hard-of-hearing applicants for the Package Handler position to have equal participation in the hiring process;

Engaging in good faith in an interactive process to identify effective reasonable accommodations to enable deaf and hard-of-hearing Package Handlers to perform the essential functions of their positions and to enjoy equal benefits and privileges of their employment; and

Absent proof of undue hardship, providing reasonable accommodations to enable deaf and hard-of-hearing aggrieved individuals to participate fully in the hiring process and/or to perform the essential functions of their positions and to enjoy equal benefits and privileges of their employment.

31.    Despite being on longstanding notice of its employment of significant number of deaf and hard-of-hearing persons as Package Handlers, FedEx has engaged in widespread abandonment of its legal duties to engage in good faith in the interactive process with deaf and hard-of-hearing Package Handlers and deaf and hard-of-hearing applicants to the Package Handler Position and to provide effective reasonable accommodation to these individuals.

32.    FedEx has not implemented a corporate-wide procedure for ensuring the effective engagement of deaf and hard-of-hearing individuals in an interactive process, or for ensuring the

effective and consistent provision of necessary and effective reasonable accommodations for this component of FedEx's workforce. It has not addressed the issue of ensuring that deaf and hard-of-hearing Package Handlers receive effective accommodations in a consistent and effective manner, despite receiving numerous complaints about denials of accommodations from deaf or hard-of-hearing Package Handlers, including but not limited to those made through the corporate "RESPECT" process, and those communicated directly to numerous managers and human resources officials, as well as to at least one regional human resources vice president and one regional human resources manager.

33.    FedEx requires aggrieved individuals to communicate an affirmative request for accommodation before FedEx engages in the interactive process with them concerning their known disability and need for reasonable accommodation, or provides effective reasonable accommodations.  FedEx has taken this position even though aggrieved individuals face significant communication challenges in the workplace absent effective accommodations, are likely to use ASL as a primary method of communication, and are likely to have low levels of fluency with regards to written English.

34.    When aggrieved individuals do make requests for reasonable accommodation, despite their disabilities and despite communication limitations, their requests are often never considered, or are refused—often with little or no interaction—resulting in widespread denials of reasonable accommodation.

**FedEx's Discrimination and Failure to Accommodate in Job Application Procedures and Hiring**

35.    FedEx has discriminated against aggrieved individuals in job application procedures and in hiring, and failed to provide interpreting services and other effective

accommodations for deaf and hard-of-hearing applicants to the Package Handler Position.  These unlawful employment practices include, but are not limited to, the following:

(a)   Anthony Pratt was told by FedEx that it had no obligation to provide accommodations in the hiring process when he requested an interpreter for the required sort-observation and tour in Lexana, Kansas.

(b)   Bruce Lucas and another aggrieved individual arrived together at the Lexana, Kansas facility to complete FedEx's sort-observation and tour, and application.  Lucas requested an interpreter, and asked to have his application process rescheduled so he could have an interpreter present. FedEx refused, telling Lucas that the tour and application were basic matters and therefore he did not require an interpreter.

(c)   Matthew Aamont requested an interpreter for his sort-observation, tour and interview in Mahtomedi, Minnesota.  FedEx told him that, since he was not yet an employee, it was under no obligation to provide an interpreter.

(d)   Courtney Dawson was not provided with an interpreter for the required sort-observation, nor for his subsequent interview in Colorado Springs, Colorado.  Instead, the FedEx manager tried to communicate through gestures.

(e)   Christina Schaefer requested an interpreter for her interview for the Package Handler position in Hagerstown, Maryland.  FedEx instead insisted that Schaefer participate in the interview by reading lips and exchanging written notes.

(f)   Tina Whitehurst applied for the Package Handler position and requested an interpreter for the mandatory pre-hire sort-observation and tour in Carol Stream, Illinois.  FedEx refused to provide Whitehurst with an interpreter for the sort-observation and tour.  As a result, Whitehurst could not complete FedEx's hiring process and was denied employment.

(g)   John Randall applied to be a Package Handler, but was rejected when FedEx refused his accommodation request that, upon hire, his vocational support coach, with whom he communicates in sign language, be permitted to assist Randall in the orientation and training process and in learning and understanding the requirements of his position.

**FedEx's Failure to Provide Effective Accommodations for New Employee Training and Orientation**

36.    FedEx has failed to provide effective reasonable accommodations to deaf and hard-of-hearing Package Handlers for new employee orientation and training. These unlawful employment practices have included, but are not limited to, the following:

(a)    Charging Party Christina Schaeffer wrote on her training acknowledgment forms in Hagerstown, Maryland, that the training videos lacked closed captioning and that she needed an interpreter for the training sessions, including for the "Quality Starts with You" video for FedEx's Quality Driven Management program.  Schaeffer did not receive the requested interpreter.

(b)    Frederick Zachary wrote on his acknowledgment form for the "Quality Starts with You" training video in Vancouver, Washington, "not understand —I'm deaf."

(c)    In Syracuse, Mark DeGroff similarly noted that the video was "not closed captioned."

(d)    Mark Valimont received interpreting services through the state department of rehabilitative services for his first day of orientation and training in Wichita Falls, Texas.  After the first day, when the state no longer provided an interpreter, Valimont did not receive any interpreting services for the remainder of his orientation and training.

(e)    Fred Weiss had to bring in his sister to interpret his orientation and new-employee training in Scranton, Pennsylvania.

(f)    Rick Gadsden's manager in Charleston, South Carolina, attempted to complete Gadsden's orientation and training by writing a summary of the numerous policies, documents, and videos that were discussed.  This included attempting to summarize payroll/tax documents, attendance and badging requirements, FMLA, HAZMAT and hazardous package identification policies, first-aid and eye-wash station location and protocol, and workplace injury policies.  The manager acknowledged to Gadsden that closed captioning for the training videos was not available, yet directed Gadsden to sign the acknowledgment forms confirming that he viewed and understood the videos.

(g)    Robert Folsom was forced to bring his mother to interpret his new-employee orientation and training in Columbia, South Carolina. Thereafter, he suggested to his manager that FedEx use video remote interpreting ("VRI")

to communicate with deaf employees. He was told that this was not possible.

(h)  Gloria Aaron never received an interpreter at any point during her employment in Charlotte, North Carolina, including for work-related meetings, despite requests to her manager. At her orientation, her manager simply pointed at items in documents or on videos.

## FedEx's Failure to Provide Effective Accommodations for Meetings, Trainings and other Workplace Communications

37.    FedEx has failed to provide effective reasonable accommodations to deaf and hard-of-hearing Package Handlers for meetings, trainings, and other workplace communications. These unlawful employment practices include, but are not limited to, the following:

(a)  Lourdes Deeb suffered a work-related injury in Medley, Florida, and was not provided with an interpreter or other effective accommodations for meetings and communications related to workers' compensation reporting and benefits and the process and requirements for returning to work.

(b)  Melina Bishop-Ruszyk was required to watch training videos in Wilmington, Connecticut, without closed captioning. Further, her shift times were changed without her being notified through any effective communications process.

(c)  Fernando Ramirez-Savon wrote on discipline forms in Albuquerque, New Mexico, that he needs an interpreter for such communications. Despite this, he did not receive an interpreter or other effective accommodations for disciplinary meetings.

(d)  Gloria Aaron was not provided with an interpreter or other effective accommodations when she attempted to report sexual harassment by a co-worker to her management in Charlotte, South Carolina. FedEx did not inform Aaron of schedule changes, and as a result, Aaron repeatedly arrived at work only to learn that her shift time had changed, causing her to miss work.

(e)  Veronica Equihua did not have access to interpreting services or other effective accommodations for group safety meetings that included fire drills and emergency evacuation drills in Carson, California.

(f)  Rosemary Johnson does not receive interpreting or other effective communication-related accommodations for her meetings, and she does not even attend the daily pre-sort meetings. Instead, she goes directly to her

station and begins working while her co-workers attend the pre-sort meetings.

(g)  Roman Carrasquillo was disciplined, and ultimately terminated from his employment in Syracuse for violating safety procedures. These procedures were addressed during pre-sort meetings and were not effectively conveyed to Carrasquillo. Carrasquillo's discipline and termination meetings were not interpreted.

(h)  Paul Burkhart made repeated requests for effective accommodations in Lewisburg, Pennsylvania, but FedEx failed to provide Burkhart with an interpreter or other effective accommodation for meetings.  Burkhart's manager instructed Burkhart to just try and read his lips.  FedEx did not effectively communicate its attendance policy to Burkhart yet terminated him for attendance issues.

(i)  FedEx routinely failed to provide Courtney Dawson with information about ongoing shift changes at the Colorado Springs facility.  As a result, Dawson's start time was often later than that of his co-workers' and he was forced to work a shorter shift.  Courtney Dawson was disciplined and terminated via written notices, and was never provided with an interpreter during the termination process.

(j)  Joseph McGinnis, another deaf employee in Exeter, Pennsylvania, often showed up for shifts that were cancelled or changed because this information was not communicated in an effective manner.

(k)  Mark Henson's supervisor in Grove Cite, Ohio, will only let him perform unloading duties, and refused to assign him the full array of Package Handler  duties because of his deafness.  Henson applied to become a full-time Package Handler.  Henson was not selected because he lacked knowledge and experience in the full array of Package Handler skills. This shortcoming is attributable to his forced isolation in unloading.  Henson's manager also routinely selects Hanson to be sent home early from his shift, before non-deaf Package Handlers.

(l)  Victor Franco applied for promotion to the Air Package Handler position in Industry, California.  FedEx refused to accommodate Franco for the required certification training and examination, claiming that a sign language interpreter could not be exposed to the information and that the requested accommodation would violate federal regulations.  Without accommodations Franco could not pass the test. Only after Franco filed his charge of discrimination did FedEx contacted the TSA and learn that there was no prohibition on providing ADA accommodations (including an interpreter) during the security examination.  Franco was then provided with

14

an interpreter and passed the examination on his next attempt, over a year after he first requested the accommodation.

(m)  Fred Weiss was investigated in Scranton, Pennsylvania, for allegations of misconduct.  When told of the investigation, Weiss immediately requested an interpreter.  Despite this request, FedEx's security specialist interviewed Weiss without an interpreter.  Weiss complained to the security specialist that he had requested and needed an interpreter for the interview, but the interview proceeded in writing.  FedEx did not provide Weiss with an interpreter until two weeks later, for the meeting convened to terminate his employment.

(n)  Charging Party Charvis Thomas was not provided with an interpreter during discipline meetings, including one resulting in his suspension.

38.     Many aggrieved individuals whose primary means of communicating is through ASL or other forms of sign language have never been provided with access to certified interpreting services by FedEx.

39.     Many aggrieved individuals have not received any effective communication-based accommodations, or have only received such accommodations on an inconsistent and *ad hoc* basis.

### FedEx's Failure to Provide Modified or Alternative Equipment and Protocols

40.     FedEx has failed to provide deaf and hard-of-hearing Package Handlers with modified or alternate equipment and/or altered standards or protocol for use of such equipment.  FedEx has also failed to implement equipment and/or protocols to ensure aggrieved individuals' safety.  These unlawful employment practices include, but are not limited to, the following:

(a)  Christina Schaeffer made numerous requests for a vibrating scanner in Hagerstown, Maryland, noting that not being able to rely on the audible beep lowered her productivity rate.

(b)  Although there were more sophisticated scanners available in Anthony Pratt's facility in Lexana, Kansas, these were distributed on a "first come/first served" basis.  Pratt's manager would not reserve this equipment for use by him or other deaf Package Handlers.

(c)    Miriam Franson was terminated from her employment in Portland, Oregon for productivity issues. In her "RESPECT" complaint to FedEx, she challenged her termination for productivity and accuracy issues, explaining that her inability to rely on the scanner's audible "beeps" caused her to be slower and more error-prone.

(d)    Mark Valimont worked at two facilities in Texas, one in Missouri, and one in Iowa. He requested that FedEx install flashing lights on its tuggers—or motorized moving equipment—to promote the safety of deaf and hard-of-hearing Package Handlers. FedEx ignored his request.

**Count I:  Discrimination Against Deaf and Hard-of-Hearing Applicants to the Package Handler Position.**

41.    The EEOC incorporates paragraphs 11 through 35.

42.    Since at least July 2007, and on a continuing basis to the present, Defendant has engaged in unlawful employment practices against aggrieved individuals who were applicants to the Package Handler position in violation of Section 102(a), (b)(5)(A), and (b)(5)(B) of Title I of the ADA, 42 U.S.C. §§ 12112(a), and (b)(5)(A), (B). The unlawful employment practices include, but are not limited to:

(a)    discriminating against aggrieved individuals on the basis of disability with respect to job application procedures and in hiring;

(b)    denying aggrieved individuals employment opportunities based on the need to make reasonable accommodations;

(c)    failing to engage in good faith in the interactive process with aggrieved individuals, despite having knowledge of their disabilities and despite the availability of effective reasonable accommodations to enable the aggrieved individuals to have equal participation in the hiring process; and

(d)    failing to provide aggrieved individuals with effective reasonable accommodations in the application and hiring process, including but not limited to, for sort-observations and tours and employment interviews.

43.    The unlawful employment practices contained in Count 1 resulted in loss of employment opportunities and/or adverse tangible employment actions and/or harms against aggrieved individuals.

16

44.      The unlawful employment practices contained in Count 1 caused aggrieved individuals emotional and mental anguish, pain and suffering, stress, humiliation and frustration.

45.      The unlawful employment practices contained in Count I were done with malice or with reckless disregard to the federally protected rights of the aggrieved individuals.

## Count II:  Denial of Reasonable Accommodations To Current and Former Deaf and Hard-of-Hearing Package Handlers.

46.      The EEOC incorporates paragraphs 11 through 40.

47.      Since at least December 2006, Defendant has engaged in unlawful employment practices against aggrieved individuals who are current or former deaf and hard-of-hearing Package Handlers in violation of Sections 102(a), (b)(5)(A), and (b)(5)(B) of Title I of the ADA, 42 U.S.C. §§ 12112(a), (b)(5)(A), (B).  These unlawful employment practices include, but are not limited to, the following:

(a)    failing to engage in good faith in the interactive process with aggrieved individuals, despite having knowledge of their disabilities and despite the availability of effective reasonable accommodations to enable the aggrieved individuals to perform the essential functions of their position and enjoy equal benefits and privileges of employment;

(b)    failing to provide aggrieved individuals with effective reasonable accommodations for work-related meetings and other communications, including but not limited to: new employee orientation and training; regularly occurring operational meetings; and meetings and other communications related to safety, job performance, scheduling and attendance, discipline, termination, workplace injuries, promotions, policies, and benefits and compensation;

(c)    failing to provide aggrieved individuals with modified or alternate equipment and/or altered standards or protocol for use of such equipment, including but not limited to vibrating scanners;

(d)    failing to provide standards or protocols to ensure the safety of aggrieved individuals in the workplace, including but not limited to flashing lights on tuggers, and emergency action and evacuation plans; and

(e)   denying equal employment opportunities to aggrieved individuals based on the need to make reasonable accommodations.

48.   The employment practices contained in Count II resulted in loss of employment opportunities and/or adverse tangible employment actions and/or harms against aggrieved individuals.

49.   The unlawful employment practices contained in Count II caused aggrieved individuals significant emotional and mental anguish, pain and suffering, stress, humiliation and frustration.

50.   The unlawful employment practices contained in Count II were done with malice or with reckless disregard to the federally protected rights of the aggrieved individuals.

## VI. PRAYER FOR RELIEF

Wherefore, Plaintiff respectfully requests that this Court:

A.   Grant a permanent injunction enjoining Defendant, its officers, successors, assigns, and all persons in active concert or participation with it, from engaging in disability discrimination against aggrieved individuals, and engaging in any other employment practices that discriminate on the basis of disability.

B.   Order Defendant to institute and carry out policies, practices, and programs that provide equal employment opportunities and reasonable accommodations for aggrieved individuals, and that eradicate the effects of its past and present unlawful employment practices.

C.   Order Defendant to make the aggrieved individuals whole by providing appropriate back pay, inclusive of all forms of compensation and lost benefits, with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices, including but not limited to the instatement of aggrieved individuals or providing them with front pay in lieu thereof.

D.      Order Defendant to make the aggrieved individuals whole by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described above in amounts to be determined at trial.

E.      Order Defendant to make the aggrieved individuals whole by providing compensation for past and future non-pecuniary losses resulting from Defendant's unlawful employment practices, including emotional and mental anguish, pain and suffering, stress, humiliation and frustration in amounts to be determined at trial.

F.      Order Defendant to pay the aggrieved individuals punitive damages for the malicious and/or reckless conduct described above, in amounts to be determined at trial.

G.      Grant such further legal or equitable relief as the Court deems necessary and proper to the public interest.

H.      Award the EEOC its costs of this action.

## VII. JURY TRIAL DEMAND

The EEOC requests a jury trial on all questions of fact raised by its Complaint.

Respectfully submitted,

P. DAVID LOPEZ
General Counsel

JAMES L. LEE
Deputy General Counsel

GWENDOLYN REAMS
Associate General Counsel

DEBRA M. LAWRENCE Bar No. 04312
Regional Attorney

MARIA LUISA MOROCCO Bar No. 24357
Supervisory Trial Attorney

EEOC
Washington Field Office
131 M Street, N.E., Suite 4NWO2F
Washington, D.C. 20507
maria.morocco@eeoc.gov
Phone: 202-419-0724

THOMAS D. RETHAGE, JR.
Senior Trial Attorney
EEOC
Philadelphia District Office
801 Market St., Suite 1300
Philadelphia, PA 19107
thomas.rethage@eeoc.gov
Phone: 215.440.2683
Fax: 215.440.2848

Date: September 30, 2014